**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 13-53-DLB**

**LISA M. JONES**                                                                **PLAINTIFF**

vs.                       **MEMORANDUM ORDER AND OPINION**

**CAROLYN W. COLVIN, Acting Commissioner
of Social Security Administration**                          **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as the ALJ did not commit reversible error at Step 2 of the sequential analysis, and he posed a proper hypothetical to the Vocational Expert.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lisa M. Jones applied for Supplemental Security Income (SSI) on August 6, 2010, alleging a disability onset date of January 31, 2010. Her application was denied initially and on reconsideration (Tr. 46-70). On October 4, 2011, Administrative Law Judge Mark Siegel conducted an administrative hearing at Plaintiff's request. (Tr. 26-45). After considering the record and Plaintiff's testimony, ALJ Siegel ruled that Plaintiff was not entitled to SSI. (Tr. 10-25). Plaintiff appealed that decision to the Appeals Council, and submitted additional evidence in support of her appeal. (Tr. 7-9). Thereafter, on January

1

18, 2013, the Appeals Council denied Plaintiff's request for review, making ALJ Siegel's decision the final decision. (Tr. 1-6).

Plaintiff filed the instant action on March 15, 2013. (Doc. # 1). It has culminated in cross-motions for summary judgment (Docs. # 10, 11), which are ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court is to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469,

474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15). At Step 2, the ALJ found that Plaintiff had the following severe impairments within the meaning of the regulations: seizure disorder, obesity, and borderline intellectual funding. (*Id.*). However, the ALJ found that Plaintiff's alleged fibromyalgia, hearing problems, restless leg syndrome, right knee and back disorder, and anxiety problems did not amount to medically determinable impairments, nor do they cause more than minimal limitations in Plaintiff's ability to work. Therefore, the ALJ concluded that none of these impairments were severe within the meaning of the regulations.

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). In reaching this conclusion, the ALJ found that Plaintiff had mild restrictions in activities of daily living, noting that she was able to care for herself and her children, do housework, and prepare meals. Additionally, the ALJ found that Plaintiff had moderate difficulties in social functioning, concentration, persistence, and pace.

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following limitations:

> [Plaintiff] is unable to climb rope, ladders or scaffolds and should not have any exposure to work hazards. She is additionally limited to understanding, remembering, and carrying out simple instructions.

(Tr. 17). However, the ALJ also concluded that Plaintiff is unable to perform any past relevant work. (Tr. 18).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, he ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform (Tr. 19-20). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 20). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the heavy exertion level as a janitor (1,700 regionally/132,000 nationally), farm worker (1,800 regionally/116,000 nationally), and packer (1,200 regionally/87,000 regionally). At the medium exertion level, the VE testified that the hypothetical individual could find work as a material mover (9000 regionally/567,000 nationally), production worker (3,700 regionally/194,000 nationally), and laundry worker (7000 regionally/40,000 nationally). Finally, the VE testified that the hypothetical individual could find work at a light exertional level as a machine feeder (1,400 regionally/42,000 nationally), dishwasher (1,500 regionally/139,000 nationally), and a janitor (1,700 regionally/133,000 nationally). Based on the VE's testimony, and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 20). Thus, the ALJ concluded that she was not under a "disability" as defined by the Social Security Act. (*Id.*).

**C.     Analysis**

Plaintiff advances three arguments on appeal. First, Plaintiff argues that the ALJ erred in finding that her back and anxiety problems were not severe impairments. Second,

4

Plaintiff contends that the ALJ failed to pose a proper hypothetical to the VE because he omitted an essential restriction. Finally, Plaintiff believes that the ALJ's determination is not based on substantial evidence. Each of these arguments will be addressed in turn.

> **1.  The ALJ did not commit reversible error in finding that Plaintiff's back and anxiety problems are not severe impairments**

Plaintiff argues the ALJ erred in finding that her back and anxiety problems are not severe impairments. Although she does not say as much, it seems Plaintiff is attacking the ALJ's analysis at step two of the five-step disability analysis. At that step, the ALJ must determine whether the individual has a "severe medically determinable physical or mental impairment" or "combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [a claimants] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520©. The severity inquiry has been "construed as a *de minimum* hurdle in the disability determination process." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). For this reason, courts have consistently held that an ALJ does not commit reversible error when he decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his analysis. *Maziarz v. Sec'y Health & Human* Serv., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly

5

could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r,* 299 F. App'x 516, 522 (6th Cir. 2008) (finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

Here, the ALJ concluded that Plaintiff had three severe impairments: seizure disorder, obesity, and borderline intellectual functioning. The ALJ then proceeded to the remaining steps of the sequential analysis, as he was required to do, and considered both Plaintiff's severe and non-severe impairments. At Step 3, he considered "*all of the claimant's impairments* individually and in combination but . . . [found] no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." (Tr. 16). And at Step 4, he specifically discussed Plaintiff's complaints of back pain and anxiety. He found there was "little [or] no objective evidence of . . . anxiety or "nerve" problems in the record" to support Plaintiff's allegations that her anxiety caused panic attacks or problems sleeping. (Tr. 17). Regarding her complaint of back pain, the ALJ found that "there is no indication that the claimant has required treatment other than pain medication." (Tr. 18). Moreover, he found that the objective testing and medical imaging did not support Plaintiff's complaints of debilitating back pain. (*Id.*). Ultimately, because the ALJ found that Plaintiff had multiple severe impairments and then considered her severe and non-severe impairments in the remaining steps, it was "legally irrelevant"

that Plaintiff's back pain and anxiety were determined non-severe.  *See McGlothin*, 299 F. App'x at 522.  This alleged error does not warrant reversal.

### 2. The ALJ posed a proper hypothetical question to the Vocational Expert

Plaintiff argues that the ALJ posed an improper hypothetical to the VE because it failed to account for her "non-exertional impairments."  (Doc. # 10-1 at 16).  While Plaintiff's briefing on this issue is unclear, she seems to argue that the ALJ's hypothetical should have included quota limitations because she is unable to keep pace.  Plaintiff believes the opinion of Dr. Robert S. Spangler, Ed. D., supports this limitation, and that the ALJ erred in according Dr. Spangler's opinion little weight.

"The ALJ is required to include in the hypothetical questions only those limitations that accurately portray a claimant's physical and mental impairments."  *Brewer v. Soc. Sec. Admin.*, 39 F. App'x 252, 254 (6th Cir. 2002).  "The ALJ is not obligated to include unsubstantiated complaints in his hypothetical questions."  *Id.*  Additionally, the ALJ is not required to include limitations assessed by any treating or non-treating source so long as that source's opinion is properly rejected.  *Grant v. Commissioner of Soc. Sec.*, 372 F. App'x 582, 587 (6th Cir. 2010) ("Because the ALJ properly discounted the medical opinions of the other doctors, he also properly excluded the limitations assessed by the doctors from the hypothetical question.").

The question, then, is whether the ALJ properly rejected the limitations assessed by Dr. Robert S. Spangler.  The ALJ considered Dr. Spangler as "not an acceptable medical source." (Tr. 18).  Plaintiff does not challenge this consideration.  As an "other source," the ALJ has the discretion to determine the proper weight to give Dr. Spangler's opinion.  *Cruse v. Comm. of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).  Social Security Ruling 06-03P

gives the ALJ five factors he must consider in exercising this discretion: how long the source has known the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment(s). *Id.* (citing *Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328-29 (D. Utah 2006)); SSR 06-03P, 2006 WL 2329939 at *5-6. Additionally, the Social Security Ruling requires the ALJ to "explain the weight given to opinions for these 'other sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. . . . " SSR 06-03P, 2006 WL 2329939 at *6.

The ALJ appropriately exercised his discretion in according Dr. Spangler's opinion little weight. As the ALJ explained, Dr. Spangler had minimal familiarity with the Plaintiff; he conducted an exam of Plaintiff one month before the evidentiary hearing, but never provided her with any sort of treatment. (Tr. 18). Pursuant to SSR 06-03P, Dr. Spangler's limited history with Plaintiff served as one strike against the credibility of his opinion. Additionally, Dr. Spangler formed his opinion based solely on Plaintiff's subjective complaints. (*Id.*). In doing so, he accepted all of Plaintiff's subjective complaints as true. (*Id.*). The evidence supporting Dr. Spangler's opinion was thus suspect, at best, serving as a second strike against the credibility of his opinion. When these two strikes were coupled together, the ALJ acted well within his discretion to reject Dr. Spangler's opinion. The ALJ, therefore, did not err in posing a hypothetical to the ALJ that did not include limitations supported only by Dr. Spangler's opinion.

8

### 3. Plaintiff's "Substantial Evidence" Argument

Plaintiff generally argues that "there is not substantial evidence to support the denial of his [sic] application for social security benefits." (Doc. # 10-1 at 18). She offers no specific challenge in this regard other than to say that "[t]he objective medical evidence unequivocally documents that the Plaintiff has several severe conditions which are disabling." (*Id.*).

Plaintiff's counsel has apparently presented this same terse argument in at least one other Social Security appeal filed in the Eastern District of Kentucky, which was rejected by Senior Judge Karl Forester. In *Vasquez v. Astrue*, Judge Forester summarized the law on how the court should treat undeveloped arguments as follows:

> Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones. In *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F. 3d 477, 490-91 (6th Cir. 2006), a claimant similarly contended that the Commissioner's decision to discontinue her benefits was not supported by substantial evidence, yet made little effort to develop this argument in her brief or to identify any specific aspects of the Commissioner's determination that lacked support in the record. In these circumstances, the Sixth Circuit noted that it
>
>> decline[d] to formulate arguments on [a claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (I) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [a claimant] appears to raise in [his/her] brief on appeal.
>
> *Id.* at 491. . .

*Vasquez v. Astrue*, 6:12-cv-125-KSF, 2013 WL 1498895, at *7 (E.D. Ky. April 11, 2013). Because the plaintiff failed to develop any particular error in arguing that the ALJ's decision

9

was not supported by substantial evidence, Judge Forester held that the plaintiff's general argument was deemed waived. *Id.*

The Court finds Judge Forester's holding in *Vasquez* equally applicable here. Plaintiff's general claim that "objective medical evidence unequivocally documents that [she] has several severe conditions which are disabling" leaves the Court with little argument to analyze. (Doc. # 10-1). The Court will not guess as to what those conditions may be or how they entitle Plaintiff to a finding that she is disabled. Therefore, Plaintiff's general argument that the ALJ's decision is not supported by substantial evidence is deemed waived.

**D.     Conclusion**

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** as follows:

(1)     Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **denied**;

(2)     Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **granted**;

(3)     This case shall be **dismissed with prejudice**; and

(4)     A Judgment shall be entered concurrently herewith.

This 17th day of March, 2014.



G:\DATA\SocialSecurity\MOOs\London\6-13-53 Jones MOO.wpd